COX, Circuit Judge:
In this appeal, we consider whether the testimony at trial of witnesses by two-way video teleconference from Australia violated the Defendants’ Sixth Amendment right to confrontation. Concluding that it did, we reverse and remand for a new trial.
I. BACKGROUND & PROCEDURAL HISTORY
Anton Pusztai and Anita Yates (“Defendants”) were charged with mail fraud, conspiracy to defraud the United States, conspiracy to commit money laundering, and various prescription-drug related offenses in connection with their involvement in the *1184 Norfolk Men’s Clinic, an internet pharmacy based in Clanton, Alabama.
Before trial, the Government moved to allow two witnesses in Australia to testify at trial by means of two-way video teleconference. The Government stated that Paul Fletcher Christian (who allegedly processed customer internet payments for the Defendants) and Dr. Tibor Konkoly (whose name the Defendants allegedly used on internet drug prescriptions) were both “essential witnesses to the government’s casein-chief,” (R.2-248 at 1). The Government noted: “[a]lthough both witnesses are willing to testify at trial via video teleconference, they are unwilling to travel to the United States. Because they are beyond the government’s subpoena powers, the government seeks permission for these witnesses to testify through the use of teleconference facilities.” (Id. at 2.) The Government also proposed moving this part of the trial to the United States Attorney’s office for the Middle District of Alabama, which had teleconferencing equipment that had been tested to the Government’s satisfaction with a similar facility in Brisbane, Australia.
Yates responded, arguing that allowing the testimony would violate her Sixth Amendment confrontation right.[1] The district court granted the Government’s motion.
Because the courtroom was not outfitted with video equipment, the trial was temporarily moved to the United States Attorney’s office for the video teleconference. Counsel for each Defendant objected on Sixth Amendment grounds to the introduction of the testimony. Paul Fletcher Christian and Dr. Tibor Konkoly were sworn in by the Clerk of the federal district court and acknowledged that they understood that their testimony was under oath and subject to penalty for perjury. The Government then questioned Konkoly and Christian by means of two-way video teleconference. Both Defendants, the jury, and the judge could see the testifying witness on monitors, and the witness could see the temporary courtroom in the U.S. Attorney’s conference room. Each of the Defendants’ attorneys cross-examined both Konkoly and Christian.
The jury found the Defendants guilty of various offenses, and the Defendants appeal.
II. ISSUES ON APPEAL AND STANDARD OF REVIEW
We discuss only two of the issues Pusz-tai and Yates present on appeal.[2] First, we consider whether witness testimony by means of live, two-way video teleconference from Australia violated their Sixth Amendment right to confrontation. Because the admission of testimony by two- *1185 way video teleconference presents a mixed question of law and fact, we review de novo the Defendants’ claim that their Sixth Amendment rights were violated. See Lilly v. Virginia, 527 U.S. 116, 137, 119 S.Ct. 1887, 1900, 144 L.Ed.2d 117 (1999).
Yates also contends that the district court erred in denying his motion for judgment of acquittal. In reviewing this ruling, we afford no deference to the district court’s decision. United States v. Ward, 197 F.3d 1076, 1079 (11th Cir.1999).
III. DISCUSSION
Pusztai and Yates contend that their Sixth Amendment confrontation rights were violated by the admission of testimony by two-way live video teleconference with the witnesses in Australia because it was not necessary to further an important public policy and because it was an unreliable form of testimony, and thus violated the rule announced in Maryland v. Craig, 497 U.S. 836, 110 S.Ct. 3157, 111 L.Ed.2d 666 (1990).
The Government argues that in this case testimony by two-way video teleconference comports with the Craig rule. In the alternative, the Government urges us to find the Craig rule inapplicable and to affirm based on a line of cases interpreting Federal Rule of Criminal Procedure 15 (dealing with depositions) and approving the admissibility of foreign depositions at trial.
The Sixth Amendment provides: “In all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him.” U.S. Const, amend. VI. This clause, known as the Confrontation Clause, “guarantees the defendant a face-to-face meeting with witnesses appearing before the trier of fact.” Coy v. Iowa, 487 U.S. 1012, 1016, 108 S.Ct. 2798, 2801, 101 L.Ed.2d 857 (1988). But this guarantee is not without exception.
In Maryland v. Craig, the Supreme Court upheld, over a defendant’s Sixth Amendment challenge, a Maryland rule of criminal procedure that allows child victims of abuse to testify by one-way closed circuit television from outside the courtroom. 497 U.S. at 858, 110 S.Ct. at 3170. In such a scenario, the defendant could see the testifying child witness on a video monitor, but the child witness could not see the defendant. Id. at 841-842, 110 S.Ct. at 3161. The defendant contended that this procedure violated his Sixth Amendment right to confrontation because he was denied a physical face-to-face encounter with the witness. Id. at 842, 110 S.Ct. at 3161-62. The Supreme Court disagreed, approving Maryland’s rule and stating: “though we reaffirm the importance of face-to-face confrontation with witnesses appearing at trial, we cannot say that such confrontation is an indispensable element of the Sixth Amendment’s guarantee of the right to confront one’s accusers.” Id. at 849-850, 110 S.Ct. at 3165-66. But the Court held “that a defendant’s right to confront accusatory witnesses may be satisfied absent a physical, face-to-face confrontation at trial only where denial of such confrontation is necessary to further an important public policy and only where the reliability of the testimony is otherwise assured.”[3] Id. at 850, 110 S.Ct. at 3166.
The Court reasoned:
the right guaranteed by the Confrontation Clause includes not only a personal examination ... but also (1) insures that *1186 the witness will give his statements under oath' — thus impressing him with the seriousness of the matter and guarding against the lie by the possibility of a penalty for perjury; (2) forces the witness to submit to cross-examination, the greatest legal engine ever invented for the discovery of truth; [and] (3) permits the jury that is to decide the defendant’s fate to observe the demeanor of the witness in making his statement, thus aiding the jury in assessing his credibility.
The combined effect of these elements of confrontation — physical presence, oath, cross-examination, and observation of demeanor by the trier of fact — serves the purposes of the Confrontation Clause by ensuring that evidence admitted against an accused is reliable....
Id. at 845-46, 110 S.Ct. at 3163 (citations and internal quotations omitted). The video teleconferencing in this case clearly lacked the first element — a witness in the courtroom in the physical presence of the defendant. Because the Defendants were denied a physical face-to-face confrontation at trial, we must ask whether the requirements of the Craig rule were satisfied in this case, calling for an exception to the physical presence requirement of the Confrontation Clause. We therefore apply the Craig rule.
The Government argues, in the alternative, that we need not apply the Craig rule for two reasons: first, because the Craig rule applies only to testimony by one-way closed-circuit television; and second, because the videoconference was akin to a Rule 15 deposition taken in a foreign country, which we have approved.
In United States v. Gigante, 166 F.3d 75 (2d Cir.1999), the Second Circuit approved the use of two-way, closed circuit television to present the testimony of a witness from an undisclosed location outside the courtroom. Id. at 79. The witness was participating in the Federal Witness Protection Program and was suffering from the final stages of inoperable cancer. Id. at 79. The Gigante court ruled that although the “use of remote, closed-circuit television must be carefully circumscribed,” id. at 80, the defendant’s Sixth Amendment right to face-to-face confrontation was not violated. Id. at 81-82. The court stated that “a trial court may allow a witness to testify via two-way closed-circuit television when this furthers the interest of justice,” id. at 81, and declined to apply the Craig standard, reasoning that because the Supreme Court crafted its two-part “standard to constrain the use of one-way closed-circuit television, whereby the witness could not possibly view the defendant ..., it is not necessary to enforce the Craig standard in this case.” Id. We do not accept this distinction. The Craig rule must be satisfied if the prosecution seeks to deny a defendant a face-to-face confrontation with a witness. See Craig, 497 U.S. at 850, 110 S.Ct. at 3166.
The Government’s reliance on a line of cases approving the admission at trial of deposition testimony is also to no avail; these cases are distinguishable because Rule 15(c) clearly provides a defendant at least an opportunity for a face-to-face encounter at the deposition. Here, the Defendants were given no such opportunity for physical confrontation with the Australian witnesses, and therefore, the deposition cases are inapposite.
In its order, the district court applied the two-part Craig rule to permit the Australian witnesses to testify by two-way video teleconference before the court in the United States Attorney’s Office in Mont *1187 gomery, Alabama.[4]
As to the first Craig requirement, the district court ruled that the testimony was necessary to further an important public policy. The court accepted the Government’s contention that the testimony would serve the “important public policy of providing the fact-finder with crucial evidence,” (R.3-314 at 19), and found that “the Government also has an interest in expeditiously and justly resolving the case.”[5] (Id. at 22.)
We accept the district court’s rationale that the witnesses were necessary to the prosecution’s case on at least some of the charges, as the record supports the Government’s assertion that the testimony was crucial to a successful prosecution of the Defendants and aided expeditious resolution of the case. Defendant Pusztai concedes “[t]hat Dr. Konkoly was a significant witness for the Government....” Appellant’s Br. at 28.
But the prosecutor’s need for the testimony in order to make a case and expeditiously resolve it are not public policies that are important enough to outweigh a defendant’s right to confront an accuser face-to-face. Comparing the public policy behind Maryland’s rule — protection of certain children from trauma caused by confronting their attacker — with the policies offered in this case — providing the fact-finder with crucial prosecution evidence and expeditious resolution of the case— leaves us unconvinced that the policy justification in this case meets Craig’s standard for an important public policy.
The district court made no findings of fact that would support a conclusion that this case is different from any other criminal prosecution in which the Government would find it convenient to present testimony by two-way video teleconference. All criminal prosecutions include at least some evidence crucial to the Government’s case, and there is no doubt that many criminal cases could be more expeditiously resolved were it not necessary for witnesses to appear at trial. See Craig, 497 U.S. at 867, 110 S.Ct. at 3175 (“The State’s interest here is in fact no more and no less than what the State’s interest always is when it seeks to get a class of evidence admitted in criminal proceedings: more convictions of guilty defendants. That is not an unworthy interest, but it should not be dressed up as a humanitarian one.”) (Scalia, J., dissenting). If we were to approve introduction of testimony in this manner, on this record, every prosecutor could argue that providing crucial prosecu *1188 tion evidence and expeditious resolution of ~he case are important public policies that support the admission of testimony by two-way video teleconference. See, e.g., Remote Testimony-A Prosecutor's Perspective, 35 U. Mich. J.L. Reform 719 (2002).
The Sixth Amendment demands more. "The text of the Sixth Amendment does not suggest any open-ended exceptions from the confrontation requirement to be developed by the courts." Crawford v. Washington, 541 U.S. 36, 124 S.Ct. 1354, 1365, 158 L.Ed.2d 177 (2004). We therefore hold that providing the fact-finder with crucial prosecution evidence and expeditious resolution of the case, on the record before us, are not important public policies that justi~ the denial of actual confrontation between witness and defendant.[6]
Since we conclude that the admission of this testimony fails the public policy prong of the Craig rule, we need not discuss Craig's second requirement-that the witness's testimony be reliable.
Finally, we turn to Yates's contention that the district court erred in denying her motion for judgment of acquittal. Yates's motion for judgment of acquittal was grounded on the assertion that the evidence admitted at trial was insufficient to support convictions. Similarly, Yates argues on this appeal that the evidence "introduced at trial" was insufficient to support her convictions. (Appellant Br. at 30). Having reviewed the evidence, we find it sufficient to support Yates's convictions. Our conclusion is buttressed by the fact that Yates testified at trial, and the jury obviously rejected her testimony.[7] *1189 See United States v. Brown, 53 F.3d 312, 314 (11th Cir.1995)(“[A] statement by a defendant, if disbelieved by the jury, may be considered as substantive evidence of the defendant’s guilt.”) Thus, retrial of Yates is not barred because we reverse for trial error rather than on insufficiency of the evidence grounds. See United States v. Scott, 437 U.S. 82, 90-91, 98 S.Ct. 2187, 2193-94, 57 L.Ed.2d 65 (1978) (“The successful appeal of a judgment of conviction, on any ground other than the insufficiency of the evidence to support the verdict, poses no bar to further prosecution on the same charge.”) (citation omitted).
IV. CONCLUSION
Because the admission of this live, two-way video teleconference testimony violated the Defendants’ Sixth Amendment confrontation rights, we reverse and remand for a new trial.
REVERSED AND REMANDED FOR A NEW TRIAL.

. A search of the record for Pusztai's response is fruitless; the docket sheet for the record on appeal does not contain an entry for Pusztai's response to the Government's motion. But Pusztai apparently submitted a response to the Government's motion, because the Government cites his response in its reply brief. We need not be concerned with whether Pusztai’s response preserved the objection because Pusztai objected to the introduction of the testimony at trial and the Government does not contend that the Sixth Amendment confrontation issue is not preserved.

. Pusztai and Yates also contend that the district court erred by: (1) denying their motion for a mistrial based on a Jencks/Brady violation; (2) not allowing Yates to cross-examine Pusztai about a relationship with another woman; (3) denying Pusztai’s motion for personal access to computer disks related to his defense; and (4) imposing the sentences that it did. These arguments are meritless and do not warrant further discussion. See 11th Cir. Rule 36-1.

. Since Craig, many states have passed legislation permitting remote testimony by child victims, either by closed-circuit television or by videotaped deposition, to protect them from trauma associated with facing their alleged assailants face-to-face. See, e.g., Ala. Code § 15-25-2; Fla. Stat. Ann. § 92.53.

. The Defendants also objected to conducting the video teleconference in the United States Attorney's office. While the Defendants have abandoned this objection on appeal, we remain concerned with the shift of a trial to a United States Attorney's office.

. The district court also noted that "in today's world of the internet and increasing globalization, more and more situations will arise in which witnesses with material knowledge are beyond the subpoena power of the Court.” (R.3-314 at 22.) Because this finding regarding the future of telecommunications was not case-specific, we do not consider it. See Craig, 497 U.S. at 855-56, 110 S.Ct. at 3169 (requiring case-specific findings).
On April 29, 2002, the Supreme Court transmitted to Congress proposed amendments to the Federal Rules of Criminal Procedure. The Court declined to transmit a proposed new Rule 26(b) that would have allowed for a two-way video teleconferencing under certain circumstances. Justice Scalia filed a statement explaining his own objections to the proposed rule, remarking that the proposed amendments were "contrary to the rule enunciated in Craig" in that they would not limit the use of remote testimony to "instances where there has been a 'case-specific finding’ that it is 'necessary to further an important public policy.' " Order of the Supreme Court, 207 F.R.D. 89, 93 (2002) (citation omitted).

. Our decision in Harrell v. Butterworth, 251 F.3d 926 (11th Cir.2001) is not to the contrary. In Harrell, we reviewed a habeas corpus case involving a Florida state trial court's admission of testimony by means of two-way video teleconference with Argentina. In the state proceedings, the Florida appellate courts applied the two-part Craig rule and approved the introduction of witness testimony by this means. Id, at 929. At issue in the federal case was whether the testimony by two-way teleconference violated the petitioner's Sixth Amendment right to confrontation. Id. Because it was a habeas case, our review of the petition was constraihed by 28 U.S.C. § 2254(d)(1) to asking whether the remote testimony was contrary to, or an unreasonable application of, clearly established federal law, as determined by the Supreme Court. id. at 930. As the Supreme Court had not ruled on the constitutionality of allowing trial testimony by two-way closed circuit television or satellite video teleconferencing, we found no violation of clearly established law. Id. at 93 1-932. But in this case, our conclusion that a similar procedure violated the Defendants' right to confrontation results from de novo review.

. Yates does not contend that we should ignore evidence admitted in violation of the confrontation clause in determining the sufficiency of the evidence. We need not decide in this case, therefore, whether an argument that we should consider only properly admitted evidence, if made, would be meritorious. See United States v. Khoury, 901 F.2d 948, 961 (11th Cir.1990) ("Although we are reversing Kluver's conviction because of harmful constitutional error, nonetheless we must still rule on Kiuver's sufficiency argument because if the properly admitted evidence presented by the government was insufficient to carry the burden of proof, then Kluver's retrial would be prohibited by the double jeopardy bar.") (emphasis added). But see Lockhart v. Nelson, 488 U.S. 33, 109 S.Ct. 285, 291, 102 L.Ed.2d 265 (1988) ("[A] reviewing court must consider all of the evidence admitted by the trial court in deciding whether retrial is permissible under the Double Jeopardy Clause.") United States v. Diaz, 300 F.3d 66, 77 (1st Cir.2002) (In considering a motion for judgment of acquittal, "we must examine `all the evidence submitted to the jury, regardless of whether it was properly admitted.' ") United States v. Bruno, 383 F.3d 65, 90 (2nd Cir.2004) (Although the defendant's plea allo-cution was improperly admitted, "we must consider it as having been properly admitted for the purpose of assessing the legal sufficiency of the evidence to support a criminal conviction.") United States v. Mackins, 32 *1189 F.3d 134, 138 (4th Cir.1994) (''[S]ufficiency of the evidence review requires the district court to consider all of the evidence admitted at trial.'') (emphasis in original). United States v. Miller, 146 F.3d 274, 280 (5th Cir.1998) ("In conducting a sufficiency review under such circumstances, we consider all of the evidence that was before the jury — including evidence that was erroneously admitted.”) United States v. Quinn, 901 F.2d 522, 530 (6th Cir.1990) ("The question presented here, then, is whether we may consider erroneously admitted testimony, as well as the properly admitted evidence, in reviewing the sufficiency of the evidence. This issue has been recently decided in the affirmative by the Supreme Court ...”) Palmer v. Grammer, 863 F.2d 588, 593 (8th Cir.1988) ("[T]he Double Jeopardy clause does not foreclose a retrial in this situation because the reviewing court must look to all the evidence, not just the legally admitted evidence, to determine whether a retrial is permitted.”) (emphasis in original) United States v. Vizcarra-Martinez, 66 F.3d 1006, 1009 (9th Cir.1995) (“We first must evaluate whether there was sufficient evidence to convict Vizcarra-Martinez. In doing so, we must assume that the evidence at trial was properly admitted.”) United States v. Wood, 958 F.2d 963, 970 (10th Cir.1992) (The “reviewing court should consider erroneously admitted evidence in determining whether double jeopardy bars retrial due to insufficient evidence at first trial.”) United States v. Alexander, 331 F.3d 116, 128 (D.C.Cir.2003) ("[W]e must consider all admitted evidence — whether admitted erroneously or not — in reviewing the sufficiency of the evidence.”)