JUDGMENT

PER CURIAM.
This appeal was presented to the court, and briefed and argued by counsel. The court has accorded the issues full consideration and has determined they do not warrant a published opinion. See D.C. Cir. Rule 36(d). It is
ORDERED and ADJUDGED that the judgment of the district court be affirmed.
John Downs, III appeals his conviction by a jury of conspiracy to distribute and possess with intent to distribute one kilogram or more of phencyclidine (“PCP”), 21 U.S.C. §§ 846, 841(a)(1) & (b)(l)(A)(iv), on two grounds. Neither is persuasive.
First, Downs contends the district court clearly erred in attributing to him at sentencing 3,285.7 grams of liquid PCP that were seized from two drug couriers at Dulles International Airport (“LAD”) in Virginia, which raised his base offense level from 32 to 34. We find no such error. See United, States v. Henry, 557 F.3d 642, 645 (D.C.Cir.2009).
The evidence showed that Downs’ involvement in the conspiracy headed by Darnell Jackson and Troy Hopkins was generally through Jackson. Jackson would often give PCP to Downs to sell and Downs would pay Jackson from the profits from his subsequent PCP sales in Annapolis, Maryland. Downs was aware that Jackson obtained his PCP from a supplier (Tony Hilt) in Compton, California. Jackson and Hopkins paid couriers $1,000 plus expenses to bring PCP back to the Washington, D.C. area from California. In early May, Jackson and Downs discussed the immediate unavailability of PCP. In a series of taped conversations, Jackson confirmed with his supplier on May 12 that PCP was available and later that day telephoned Downs to ask him for $1,400 to send two drug couriers to California to pick up PCP, and Downs agreed to provide it. Jackson and Downs spoke again on May 13, confirming Downs’ efforts to get Jackson the $1,400 for the couriers. On May 15, two couriers flew from IAD to California on flights costing roughly *126 $1,400. On May 22 Downs also agreed to give Jackson $1,000 for PCP that Jackson had “fronted” for Downs. On May 23, Jackson told Hopkins he expected to get $3,000 from Downs that Jackson would use to pay for two couriers’ trip from California to IAD. On May 24, two couriers arrived at IAD from California, and the FBI seized 3,285.7 grams of liquid PCP from them. When Jackson learned of the seizure, he telephoned Downs to inform him because Downs “was waiting ... for the [PCP] to come in” that day. Oct. 23, 2007 Tr. at 31.
The district court acknowledged that the May 12 telephone call and the $1,400 Jackson requested from Downs may not have related to the shipment of PCP that was seized at IAD on May 24. Nonetheless the district court found that, together, the May 12 telephone call discussing the $1,400, Downs’ selling PCP “fronted” to him by Jackson, and the May 24 call informing Downs of the seizure indicated that Downs was part of the ongoing conspiracy to bring PCP to the Washington, D.C. area from California. Downs offers no reason for this court to view this as other than a reasonable inference from the evidence. Cf United States v. Hart, 324 F.3d 740, 747 (D.C.Cir.2003). Downs has never denied agreeing to make the $1,400 payment, only that he actually intended to pay; the May 12 and subsequent telephone conversations of Downs’ repeated assurances he would pay belie his denial. The district court could properly hold Downs responsible for the 3,285.7 grams of PCP seized at IAD even if he did not know about that shipment because the shipment was reasonably foreseeable to him and in furtherance of his agreed upon and jointly undertaken criminal activity. United States v. Tabron, 437 F.3d 63, 66 (D.C.Cir. 2006); United States v. Stover, 329 F.3d 859, 874 (D.C.Cir.2003); U.S.S.G. § 1B1.3(a)(1)(B); see generally Pinkerton v. United States, 328 U.S. 640, 66 S.Ct. 1180, 90 L.Ed. 1489 (1946). Downs’ challenge to his 120 months’ sentence of imprisonment, consistent with the statutory mandatory minimum after he received the benefit of the safety valve (resulting in a Guideline range of 121-151 months), thus fails.
Second, Downs contends the district court abused its discretion in denying his motion for a new trial because of the ineffectiveness of his trial counsel. See United States v. Alexander, 331 F.3d 116, 128-29 (D.C.Cir.2003). However, under Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), Downs has shown .neither that his trial counsel made errors so serious that counsel was not functioning as the “counsel” guaranteed the defendant by the Sixth Amendment nor that he was prejudiced. See id. at 687, 104 S.Ct. 2052. The record shows that trial counsel informed Downs of the risks of calling character witnesses because that would allow the prosecutor to introduce rebuttal evidence of Downs’ admissions, during post-arrest debriefing meetings with FBI agents, to purchasing PCP from Jackson on repeated occasions and reselling it in Annapolis.
The district court found, after an evidentiary hearing, that Downs’ trial counsel made a reasonable tactical decision in deciding to put on evidence of Downs’ good character in the community. Essentially, the district court noted trial counsel faced a difficult decision in view of Downs’ insistence on going to trial (and testifying) and calling character witnesses even after being advised of the risk. The district court found that the decision to call character witnesses was a mutual one made by Downs and his trial counsel and that, given the government’s evidence, trial counsel was not deficient in pursuing a character *127 defense. As trial counsel explained, calling character witnesses might be beneficial by “humaniz[ing]” Downs. Oct. 16, 2008 Tr. at 81. Downs does not explain how the district court erred. See Strickland, 466 U.S. at 689, 104 S.Ct. 2062. Further, Downs does not attempt to show how he was prejudiced, and this alone suffices for the court to affirm the district court’s rejection of his Sixth Amendment claim. See id. His own cross-examination covered many of the same matters as the cross-examination of one of the character witnesses. The district court noted Downs’ own testimony hurt his case, observing that “he was a very bad witness.” Oct. 29, 2008 Tr. at 48. Downs’ new counsel for sentencing appeared to agree, observing that the jury had no choice except to find Downs guilty because he admitted on the witness stand that he committed the offense. Feb. 5, 2009 Tr. at 36.
Pursuant to D.C. Circuit Rule 36, this disposition will not be published. The Clerk is directed to withhold issuance of the mandate herein until seven days after resolution of any timely petition for rehearing or rehearing en banc. See Fed. R.App. P. 41(b); D.C. Cir. Rule 41.