PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 17-3503
_____

UNITED STATES OF AMERICA

v.

KENNETH DANIELS,

                                        Appellant

_____

On Appeal from the United States District Court
For the Eastern District of Pennsylvania
(D.C. Crim. No. 2-15-cr-00127-001)
Honorable Berle M. Schiller, District Judge
_____

Submitted under Third Circuit L.A.R. 34.1(a)
October 23, 2018

BEFORE:  KRAUSE, COWEN, and FUENTES,
Circuit Judges

(Opinion Filed:  February 7, 2019)
_____

Emily McKillip
William M. McSwain
Timothy M. Stengel
Robert A. Zauzmer
Office of United States Attorney
615 Chestnut Street
Suite 1250
Philadelphia, PA 19106

 Attorneys for Appellee


Karl D. Schwartz
P.O. Box 8846
Elkins Park, PA 19027

 Attorney for Appellant

———————

OPINION OF THE COURT

———————

COWEN, Circuit Judge.

 Kenneth Daniels appeals from the criminal sentence entered by the United States District Court for the Eastern District of Pennsylvania. He argues that a violation of the Pennsylvania Controlled Substance, Drug, Device and Cosmetic Act, 35 Pa. Stat. Ann. § 780-113(a)(30), does not qualify as a "serious drug offense" under the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e)(2)(A)(ii). We must first decide whether § 924(e)(2)(A)(ii)'s definition of a "serious drug offense" encompasses attempts (as defined under federal law) to

manufacture, distribute, or possess with intent to manufacture or distribute a controlled substance. If it does, we must then consider whether the scope of attempt and accomplice liability under Pennsylvania law is coextensive with the meaning of those terms under federal law. Based in large part on our recent rulings in United States v. Glass, 904 F.3d 319 (3d Cir. 2018), petition for cert. filed (U.S. No. 18-6748) (Nov. 14, 2018), and Martinez v. Attorney General, 906 F.3d 281 (3d Cir. 2018), as well as our older yet still precedential opinion in United States v. Gibbs, 656 F.3d 180 (3d Cir. 2011), we answer both questions in the affirmative. Accordingly, Daniels's sentence will be affirmed.

## I.

Pursuant to a plea agreement, Daniels entered a guilty plea to one count of being a convicted felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(e). He had at least three previous convictions under the Pennsylvania drug statute, 35 Pa. Stat. Ann. § 780-113(a)(30), for possession with intent to deliver cocaine.

Daniels reserved his right to challenge the government's allegation that he was an armed career criminal under 18 U.S.C. § 924(e).[1] If applied, § 924(e) triggers a fifteen-year mandatory minimum. According to Daniels, his convictions cannot count as ACCA predicates because the elements of the state drug statute sweep more broadly than the generic definition of a drug

---

[1] Pursuant to United States v, Zudick, 523 F.2d 848 (3d Cir. 1975), Daniels also preserved his right to appeal the District Court's denial of his suppression motion. He does not, however, raise that issue in this appeal.

3

distribution crime. He argued that, "[b]y virtue of Pennsylvania's treatment of solicitation and mere offers to sell, it is far from clear that a violation of 35 Pa.C.S. § 780-113(a)(30), is, as a categorical matter, a 'serious drug offense' within the meaning of ACCA." (JA25.) At sentencing, Daniels also argued that, without his armed career criminal designation, his Guidelines range would have been 92 to 115 months. However, application of this designation would result in a Guideline range of 180 months (the statutory minimum) to 210 months. The District Court rejected Daniels's challenge and sentenced him to 180 months' imprisonment.

## II.

The District Court had subject matter jurisdiction under 18 U.S.C. § 3231. We possess appellate jurisdiction pursuant to 18 U.S.C. § 3742(a) and 28 U.S.C. § 1291.

Because this appeal raises questions of law, we exercise de novo review. See, e.g., Gibbs, 656 F.3d at 184.

## III.

Under 18 U.S.C. § 922(g)(1), it is unlawful for a felon to possess a firearm. The ACCA mandates a minimum sentence of fifteen years' imprisonment if the felon in possession of a firearm has three previous convictions for either "a violent felony" or "a serious drug offense" (or both):

> **(e)(1)** In the case of a person who violates section 922(g) of this title and has three previous convictions by any court referred to in section 922(g)(1) of this title for a violent felony or a

4

serious drug offense, or both, committed on occasions different from one another, such person shall be fined under this title and imprisoned not less than fifteen years, and, notwithstanding any other provision of law, the court shall not suspend the sentence of, or grant a probationary sentence to, such person with respect to the conviction under section 922(g).

**(2)** As used in this subsection—

**(A)** the term "serious drug offense" means—

**(i)** an offense under the Controlled Substances Act (21 U.S.C. 801 et seq.), the Controlled Substances Import and Export Act (21 U.S.C. 951 et seq.), or chapter 705 of title 46, for which a maximum term of imprisonment of ten years or more is prescribed by law; or

**(ii)** an offense under State law, involving manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance (as defined in section 102 of the Controlled Substances Act (21 U.S.C. 802)), for which a maximum term of imprisonment of ten years or more is prescribed by law;

**(B)** The term "violent felony" means any crime punishable by imprisonment for a term exceeding one year, or any act of juvenile delinquency involving the use or carrying of a firearm, knife, or destructive device that would be punishable by imprisonment for such term if committed by an adult, that—

> **(i)** has as an element the use, attempted use, or threatened use of physical force against the person of another; or
>
> **(ii)** is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another; and

**(C)** The term "conviction" includes a finding that a person has committed an act of juvenile delinquency involving a violent felony.

18 U.S.C. § 924(e).

It is undisputed that we must apply the "categorical" approach in order to decide whether Daniels had at least three previous convictions for "a serious drug offense." Id. "When deciding whether a previous conviction counts as a 'violent felony or a serious drug offense' under the ACCA, a sentencing court may look only to the elements of a defendant's prior conviction, not 'to the particular facts underlying those convictions.'" United States v. Abbott, 748 F.3d 154, 157 (3d

Cir. 2014) (quoting Descamps v. United States, 570 U.S. 254, 260-61 (2013)). As the government states in its appellate brief, "the issue is whether the elements of the prior crime encompass and are no broader than the elements described in the federal definition." (Appellee's Brief at 14 (citing Abbott, 748 F.3d at 157)). If the elements of the prior conviction are identical to (or narrower than) the elements of the generic ACCA crime, the prior conviction can serve as an ACCA predicate. See, e.g., Descamps, 570 U.S. at 261. "But if the statute sweeps more broadly than the generic crime, a conviction under that law cannot count as an ACCA predicate, even if the defendant actually committed the offense in its generic form." Id. The categorical approach "requires a realistic probability, not a theoretical possibility, that the State would apply its statute to conduct that falls outside the generic definition of a crime." Gonzales v. Duenas-Alvarez, 549 U.S. 183, 193 (2007). A defendant may establish such a probability by showing that the state statute was so applied in his or her own case or by pointing to other cases in which the state courts applied the statute in a non-generic fashion. See, e.g., id. Furthermore, a "modified" categorical approach may apply to divisible statutes, i.e., a statute of conviction that lists alternative elements (as opposed to alternative means for committing the same offense). See, e.g., Mathis v. United States, 136 S. Ct. 2243, 2248-50 (2016). Documents like the indictment, jury instructions, a plea agreement, or a colloquy may then be employed to determine the specific crime of conviction. See, e.g., id. at 2249. "The court can then compare that crime, as the categorical approach commands, with the relevant generic offense." Id.

Section 780-113(a)(30) prohibits (except as authorized by the Pennsylvania drug statute) "the manufacture, delivery, or possession with intent to manufacture or deliver, a controlled

7

substance by a person not registered under this act, or a practitioner not registered or licensed by the appropriate State board, or knowingly creating, delivering or possessing with intent to deliver, a counterfeit controlled substance." As we recognized in Glass, "Pennsylvania law goes on to define 'deliver' as 'the actual, constructive, or attempted transfer from one person to another of a controlled substance.'" Glass, 904 F.3d at 322 (quoting 35 Pa. Stat. Ann. § 780-102(b)). "[T]he federal counterpart to this statute, the Controlled Substances Act (CSA), also defines the 'delivery' of a controlled substance to mean 'the actual, constructive, or attempted transfer of a controlled substance,' 21 U.S.C. § 802(8)."[2] Glass, 904 F.3d at 322. In turn, 21 U.S.C. § 802(11) states that "[t]he term 'distribute' means to deliver (other than by administering or dispensing) a controlled substance or a listed chemical." Pennsylvania's drug law also defines "distribute" to mean "to deliver other than by administering or dispensing a controlled substance, other drug, device or cosmetic." § 780-102(b). Both federal and Pennsylvania law include statutory provisions addressing attempt and accomplice liability. See 18 U.S.C. § 2 ("Principals"); 21 U.S.C. § 846 ("Attempt and conspiracy"); 18 Pa. Cons. Stat. Ann. §§ 306 ("Liability for conduct of another;

---

[2] The full federal and state definitions of "deliver" or "delivery" are nearly identical. According to federal law, "[t]he terms 'deliver' or delivery' means the actual, constructive, or attempted transfer of a controlled substance or a listed chemical, whether or not there exists an agency relationship." 21 U.S.C. § 802(8). Pennsylvania law states that these two terms mean "the actual, constructive, or attempted transfer from one person to another of a controlled substance, other drug, device or cosmetic whether or not there is an agency relationship." 35 Pa. Stat. Ann. § 780-102(b).

8

complicity"), 901 ("Criminal attempt").

According to Daniels, Section 780-113(a)(30) sweeps more broadly than the generic federal definition of "a serious drug crime." Daniels vigorously argues that, unlike the Pennsylvania drug statute, a "serious drug crime" under the ACCA does not include attempts. He further argues that, "[e]ven assuming that attempted drug offenses are properly included as serious drug offense predicates," Pennsylvania's drug act includes conduct that is too inchoate and incipient to satisfy federal drug law—specifically "mere offers, mere preparation, and mere solicitation (from the buyer)." (Appellant's Brief at 20.) Given our ruling in Gibbs, we conclude that the ACCA's definition of a "serious drug offense" encompasses attempts, as defined under federal law, to manufacture, distribute, or possess with intent to manufacture or distribute a controlled substance. We likewise determine that, based on this Court's recent Glass and Martinez decisions, the scope of attempt and accomplice liability under Pennsylvania law is coextensive with the meaning of those terms under federal law.

## A. A "Serious Drug Offense" and Attempts

Glass and Martinez were not ACCA cases. On the contrary, the Glass court considered whether the District Court appropriately applied a career offender enhancement under the Guidelines. See Glass, 904 F.3d at 321-24. The Guidelines application note "states that the term 'controlled substance offense' applies not only to a statute that bars distribution of controlled substances, but also to 'the offenses of aiding and abetting, conspiring, and *attempting to commit such offenses.*'" Id. at 322 (quoting U.S.S.G. § 4B1.2 cmt. n.1). Martinez was an

immigration case, see Martinez, 906 F.3d at 284-87, and the immigration provisions at issue explicitly refer to attempts or require a match with the CSA's ban on drug trafficking,[3] see 8

[3] In United States v. Abbott, 748 F.3d 154 (3d Cir. 2014), we considered whether "[Section 780-113(a)(30)] is a 'divisible' statute under [Descamps]," id. at 156. In that ACCA case, we concluded that Section 780-113(a)(30) is divisible by drug type, thereby permitting the application of the modified categorical approach. Id. at 157-60; see also United States v. Henderson, 841 F.3d 623, 626-63 (3d Cir. 2016) (reaching same conclusion as to 35 Pa. Stat. Ann. § 780-113(f)(1)). Daniels is correct that Abbott did not specifically address either the question of whether a "serious drug offense" under § 924(e)(2)(A)(ii) encompasses attempt crimes or the scope of the Pennsylvania drug statute as to attempt offenses or accomplice liability. However, we did state that "Abbott's previous conviction under 35 Pa. Stat. Ann. § 780-113(a)(30) for possession with intent to distribute cocaine is a 'serious drug offense' and properly served as a predicate offense for the imposition of the fifteen-year minimum sentence under the ACCA." Abbott, 748 F.3d at 160. According to our recent opinion in Glass, "[w]e have already held that conviction under § 780-113(a)(30) for cocaine-based offenses is not overbroad in the context of the ACCA's definition of 'serious drug offense.'" Glass, 904 F.3d at 323 (citing Abbott, 748 F.3d at 160).

In this case, it is undisputed that Daniels's prior convictions involved cocaine. The government also does not take issue with Daniels's characterization of Section 780-113(a)(30) as indivisible with respect to the manner of committing the offense (i.e., whether by manufacture, delivery, or possession with intent to manufacture or deliver, attempted

U.S.C. §§ 1101(a)(43)(B) (stating that "aggravated felony" means "illicit trafficking in a controlled substance (as defined in section 802 of title 21), including a drug trafficking crime (as defined in section 924(c) of title 18)"), 1227(a)(2)(B)(i) ("Any alien who at any time after admission has been convicted of a violation of (or a conspiracy or attempt to violate) any law or regulation of a State, the United States, or a foreign country relating to a controlled substance (as defined in section 802 of title 21), other than a single offense involving possession for one's own use of 30 grams or less of marijuana, is deportable.").

But Gibbs did consider the meaning of a "serious drug offense" under the ACCA. The government appealed from the district court's ruling that a prior conviction under Delaware law for wearing body armor while committing a felony is not a predicate offense under the ACCA. Gibbs, 656 F.3d at 182. The defendant had been charged in state court under this body armor statute and for possession with intent to deliver. Id. at 183. He pled guilty to the first count but not the second one. Id. On appeal, we agreed with the government and held "that the body armor conviction is an ACCA predicate offense because it involved the possession of cocaine with intent to distribute. Id. at 182. In short, "[i]t is 'a serious drug offense.'" Id. (quoting § 924(e)(1)).

In reaching our decision, we began with the text of the ACCA:

> The issue is whether the body armor conviction "involv[ed] manufacturing, distributing, or

manufacture, delivery, or possession with intent to manufacture or deliver, or acting as an accomplice).

11

possessing, with intent to manufacture or distribute, a controlled substance."

Congress's use of the term "involving" expands the meaning of a serious drug offense beyond the simple offenses of manufacturing, distributing, and possessing a controlled substance. See, e.g., United States v. James, 834 F.2d 92, 93 (4th Cir. 1987) (stating that "violations 'involving' the distribution, manufacture, or importation of controlled substances must be read as including more than merely crimes of distribution, manufacturing, and importation themselves"). The plain meaning of "involve" is "to relate closely" or to "connect closely." United States v. McKenney, 450 F.3d 39, 43 (1st Cir. 2006) (citing Webster's Third New International Dictionary 1191 (1993) and The American Heritage Dictionary 921 (4th ed. 2000), respectively). The definition of a serious drug offense should be construed to extend "§ 924(e) beyond the precise offenses of distributing, manufacturing, or possessing, and as encompassing as well offenses that are related to or connected with such conduct." United States v. King, 325 F.3d 110, 113 (2d Cir. 2003). In adopting this position, we conform with all courts of appeals that have addressed the scope of the definition of a serious drug offense. See United States v. Vickers, 540 F.3d 356, 365 (5th Cir. 2008); McKenney, 450 F.3d at 42; United States v. Alexander, 331 F.3d 116, 131 (D.C. Cir. 2003); King, 325 F.3d at 113; United States v. Brandon,

12

247 F.3d 186, 191 (4th Cir. 2001).

Id. at 184-85.

The Gibbs Court then considered and rejected the defendant's theory that the definition of state serious drug offenses set forth in Section 924(e)(2)(A)(ii) should be limited to the types of crimes identified by the three federal statutes (including the CSA) referenced in Section 924(e)(2)(A)(i). Id. at 185. "While both subsections relate to the same subject, there is no reason to think that subsection (i) should limit our construction of subsection (ii). If Congress wished to do this, it could have done so [as it did in the "three strikes" law, 18 U.S.C. § 3559(c)]." Gibbs, 656 F.3d at 185. "Instead, Congress used broad terminology—'involving'—to define the category of serious drug offenses without limiting its scope to federal statutes." Id. "Congress adopted a broad interpretation of 'a serious drug offense' because it intended to define 'an entire class of state offenses "involving" certain activities, namely, "manufacturing, distributing, or possessing with intent to manufacture or distribute" a controlled substance.' Alexander, 331 F.3d at 131 (quoting 18 U.S.C. § 924(e)(2)(A)(ii))." Gibbs, 656 F.3d at 185 ("Each state has different serious drug crimes and different definitions for similar crimes. Thus, Congress relied upon general language referencing the entire class of serious state drug offenses.").

Although the statutory language broadly carves out a class of serious state drug crimes, Gibbs observed that there are limits to how widely we could construe this class. Id. "As the First Circuit noted, '(n)ot all offenses bearing any sort of relationship with drug manufacturing, distribution, or possession with intent to manufacture or distribute will qualify as predicate

13

offenses under ACCA. The relationship must not be too remote or tangential.'" Id. (quoting McKenney, 450 F.3d at 45).

"We must therefore determine whether Gibbs' body armor conviction is related to or connected with manufacturing, distributing, or possessing, with intent to manufacture or distribute, a controlled substance or if it is too remote or tangential." Id. at 185-86. Initially, this Court went beyond the terms of the statute of conviction (which simply proscribes the wearing of body armor during the commission of a felony) to consider the indictment (alleging in Count I that Gibbs knowingly wore body armor during the commission of felony possession with intent to deliver cocaine as set forth in Count II, which was incorporated by reference) pursuant to the modified categorical approach. Id. at 186-88. We then examined "whether manufacturing, distributing, or possessing, with intent to manufacture or [distribute], a controlled substance, is 'an inherent part or result of the generic crime' of wearing body armor while committing a felony, where that felony is possession with intent to distribute cocaine." Id. at 188 (quoting Brandon, 247 F.3d at 188). We found that the underlying felony is an inherent part of the offense because "it must be proven in order to be guilty of the body armor offense." Id. While the defendant need not be convicted of a drug offense, the prosecution must still prove the elements of the drug offense in order to establish that the defendant is guilty of some underlying felony. Id. "In pleading guilty to the body armor offense, Gibbs pled guilty to the elements of possession with intent to distribute cocaine." Id. Wearing body armor also serves to promote and advance the underlying drug crime (in other words, it makes it more likely that a felony will occur).[4] Id.

---

[4] We also rejected Gibbs's argument that "this

14

We have no trouble concluding that a conviction under state law for attempted manufacturing, distributing, or possessing with intent to manufacture or distribute a controlled substance that also meets the requirements for an attempted drug crime under federal law would satisfy the approach we adopted in Gibbs.

Daniels asserts that Gibbs does not extend the definition of a "serious drug offense" beyond the generic categories of manufacturing, distributing, and possession with intent. Citing our ruling in United States v. Tucker, 703 F.3d 205, 213 (3d Cir. 2012), he contends that "the Gibbs Court held only that a possession-with-intent offense does not cease to be a serious drug offense on the ground that it was the factual predicate for the felony establishing the crime of possession of body armor in course of a felony." (Appellant's Reply Brief at 5 (citing Gibbs, 656 F.3d at 188).) However, the Tucker Court merely rejected the government's argument that the state court charge of conspiracy to sell drugs (which resulted in a conviction) incorporated a separate possession with intent to deliver ("PWID") cocaine charge (which resulted in an acquittal) as the overt act. Tucker, 703 F.3d at 212-13. We distinguished Gibbs because, unlike the body armor count (which expressly incorporated the drug charge), "neither the conspiracy Bill nor the conspiracy incorporated the separate PWID charge." Id. at 213. "The jury could legally have found the overt act to be possession of marijuana with the intent to deliver. Nothing 'actually required' the jury to treat the separate PWID cocaine charge as the overt act." Id.

interpretation of 'a serious drug offense' raises a constitutional problem of fair notice." Gibbs, 656 F.3d at 188-89.

15

Simply put, if a body-armor conviction is sufficiently "related to or connected with" manufacturing, distributing, or possessing with the intent to manufacture or distribute a controlled substance to pass muster under Gibbs, the federal inchoate versions of these enumerated offenses clearly satisfy the test. As the government aptly explains, "[t]o say that an attempt to manufacture methamphetamine does not involve manufacturing methamphetamine, or that an attempt to distribute cocaine does not involve the distribution of cocaine, is untenable." (Appellee's Brief at 21.) The criminal attempt to commit an offense "involves" the completed offense.

In McKenney, the First Circuit explained why "[t]he plain meaning of 'involve' is 'to relate closely' or to 'connect closely.'" Gibbs, 656 F.3d at 184 (quoting McKenney, 450 F.3d at 43). Rejecting the defendant's narrow definition of "involve" as meaning "has as an element," to "include," or to "contain as a part," the First Circuit observed that his argument would require "an awkward and unusual construction of the text to mean that a conspiracy to possess with intent to distribute does *not* 'involve' possession with intent to distribute." McKenney, 450 F.3d at 43 (emphasis in original) (footnote omitted). "Conspiracies "involve' their objects, as that term is used in common parlance." Id. The First Circuit explained: "[w]e need not decide today where the line is: we hold only that the relationship between the inchoate offense of conspiracy and its object—its entire purpose—is plainly close enough that a conspiracy to possess with intent to distribute is, under the ACCA, an offense 'involving . . . possessing with intent to . . . distribute.'" Id. at 45 (citing United States v. Fiore, 983 F.2d 1, 3-4 & n.4 (1st Cir. 1992), abrogated on other grounds by United States v. Giggey, 551 F.3d 27 (1st Cir. 2008) (en banc); United

16

States v. Hawkins, 139 F.3d 29, 34 (1st Cir. 1998)); see also id. at 44 ("By contrast, in McKenney's case, there is no question that the possession at the heart of the conspiracy was possession with intent to distribute. That is the charge to which McKenney pled."). Likewise, the relationship between the inchoate offense of attempt and the completed offense the defendant attempted to commit is plainly close enough that an attempt to manufacture, distribute, or possess with intent to manufacture or distribute a controlled substance is, under the ACCA, an offense involving manufacturing, distributing, or possessing with intent to manufacture or distribute a controlled substance.

In Gibbs, we indicated that "all courts of appeals that have addressed the scope of the definition of a serious drug offense" have adopted an expansive understanding of this concept. Gibbs, 656 F.3d at 185 (citing Vickers, 540 F.3d at 365; McKenney, 450 F.3d at 42; Alexander, 331 F.3d at 131; King, 325 F.3d at 113; Brandon, 247 F.3d at 191). Since our 2011 ruling, the circuit courts have continued to apply an expansive reading of § 924(e)(2)(A)(ii) (and Daniels has not cited any contrary case law). See United States v. Herrold, 813 F.3d 595, 599-600 (5th Cir. 2016), cert. granted & vacated on other grounds, 137 S. Ct. 310 (2016); United States v. Whindleton, 797 F.3d 105, 108-11 (1st Cir. 2015); United States v. Bynum, 669 F.3d 880, 884-88 (8th Cir. 2012). It is also uncontested that every court of appeals to have considered the specific question of whether a "serious drug offense" under § 924(e)(2)(A)(ii) includes attempts has answered this question in the affirmative.[5] See United States v. Coleman, 700 F.3d 329,

---

[5] The government cites to a number of non-precedential dispositions that have reached the same conclusion regarding the inclusion of attempt crimes. See United States v. White, 288 F.

17

339 (8th Cir. 2012); United States v. Williams, 488 F.3d 1004, 1008-09 (D.C. Cir. 2007); United States v. Winbush, 407 F.3d 703, 705-08 (5th Cir. 2005); Alexander, 331 F.3d at 130-31; King, 325 F.3d at 112-15.

Defending the narrower definition expressly considered and rejected by the First Circuit in McKenney, Daniels invokes the canon of "*expressio unius est exclusio alterius*—when a statute specifically enumerates some categories, it impliedly excludes others." Ray v. Kertes, 285 F.3d 287, 296 (3d Cir. 2002) (citing Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 168 (1993)). According to Daniels, "the offenses listed under Section 924(e)(2)(A)(ii) involve a comprehensive set of ways of committing narcotics offenses (except for attempts), leading to the conclusion that the exclusion was 'not inadvertence.'" (Appellant's Reply Brief at 11 (quoting Barnhart v. Peabody Coal Co., 537 U.S. 149, 168 (2003)).) "Indeed, the other ACCA predicate 'violent felony,' does provide an attempt alternative. *See* 18 U.S.C. § 924(e)(2)(B) (including 'attempted use' of physical force as violent felony)." (Appellant's Brief at 17.) The CSA criminalizes attempted federal drug offenses, see 21 U.S.C. §§ 802(8), 846, and, in turn, 18 U.S.C. § 924(e)(2)(A)(i) provides that a "serious drug offense" includes "an offense under the Controlled Substances Act." Daniels therefore argues that Congress, if it had really "intended to include inchoate conduct as a drug predicate" under § 924(e)(2)(A)(ii), purportedly could have done what it did with respect to the other ACCA predicate offenses. (Appellant's Brief at 18.) The

App'x 89, 90 (4th Cir. 2008) (per curiam); United States v. Holt, 246 F. App'x 602, 609-10 (11th Cir. 2007); United States v. Thomas, 13 F. App'x 233, 240-43 (6th Cir. 2001).

Guidelines' application note addressed in Glass (as well as an immigration provision considered in Martinez) also explicitly refers to attempts. See 8 U.S.C. § 1227(a)(2)(B)(i); U.S.S.G. § 4B1.2 cmt. n.1.

Nevertheless, the *expressio unius* canon has its limits, e.g., it "does not apply to every statutory listing or grouping; it has force only when the items expressed are members of an 'associated group or series,' justifying the inference that items not mentioned were excluded by deliberate choice, not inadvertence." Barnhart, 537 U.S. at 168 (citing United States v. Vonn, 535 U.S. 55, 65 (2002)). There was no reason for Congress to add specific language regarding attempt crimes because it had already included the term "involving"—a term that both this Court and every other circuit court to have addressed the issue has concluded must be interpreted broadly (and that, under this existing case law, clearly encompasses attempts). Neither § 924(e)(2)(A)(i) nor § 924(e)(2)(B)(i) includes such expansive language. See, e.g., Alexander, 331 F.3d at 131 ("As the government correctly observes, the Congress defined the terms 'violent felony' and 'serious drug offense' in decidedly different manners. Unlike the definition of 'violent felony,' the definition of 'serious drug offense' does not speak in specifics; instead, it defines the term to include an entire class of state offenses 'involving' certain activities, namely 'manufacturing, distributing, or possessing with intent to manufacture or distribute' a controlled substance." (quoting § 924(e)(2)(A)(ii))). The career offender Guideline similarly defines a "controlled substance offense" as, inter alia, an offense that "*prohibits* the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute,

19

or dispense." U.S.S.G. § 4B1.2(b) (emphasis added).

In his reply brief, Daniels recognizes that "the character of federal drug offenses can inform the question of whether a prior drug offense sweeps more broadly than the elements of the generic offense." (Appellant's Reply Brief at 4 (citing United States v. Mitchell, 218 F. Supp. 3d 360, 368 (M.D. Pa. 2016)).) A "serious drug offense" includes an offense under state law involving "distributing" or "possessing with intent to . . . distribute" a controlled substance. 18 U.S.C. § 924(e)(2)(A)(ii). The federal CSA defines this term "distribute" to mean "to deliver (other than by administering or dispensing) a controlled substance or a listed chemical." 21 U.S.C. § 802(11). The federal drug statute then defines the "terms 'deliver' or 'delivery' as including an "attempted transfer of a controlled substance." Id. § 802(8). Section 924(e)(2)(A)(ii) expressly references the CSA in the parenthetical "(as defined in section 102 of the Controlled Substances Act (21 U.S.C. 802))." This Court stated in Rojas v. Attorney General, 728 F.3d 203 (3d Cir. 2013) (en banc), that "the parenthetical '(as defined in section 802 of Title 21)' [used in §§ 1227(a)(2)(A)(i)(II) and 1227(a)(2)(B)(i)] is a restrictive modifier that affects only its immediate antecedent, a 'controlled substance,'" id. at 209. However, the en banc Court was simply explaining that "the controlled substance [must be] as such by federal law." Id.

Moreover, this analysis does not translate to the ACCA context because § 924(e)(2)(A)(ii) includes the terms "manufacturing, distributing, or possessing with intent to manufacture or distribute" immediately before the phrase "a controlled substance" and the parenthetical itself. By referring to the ways of committing a controlled substance offense—which are defined in "section 802 of the Controlled Substance

20

Act"—the ACCA provision makes it clear that the parenthetical modifies more than just "a controlled substance." "Congress has [also] demonstrated that it does not view attempted drug trafficking offenses as any less serious than completed acts" because it subjected any person who attempts or conspires to commit a drug offense to the same penalties applicable to the completed offenses. Coleman, 700 F.3d at 339 (quoting 21 U.S.C. § 846).

The D.C. Circuit relied on another well-established canon of statutory construction to reject the defendant's *expressio unius* argument:

> Moreover, as the district court recognized, the use of "attempted" in section 924(e)(2)(B)(i) does not—by itself—indicate that the Congress intended to exclude attempt convictions from the definition of "serious drug offense[s]" in section 924(e)(2)(A)(ii). Indeed, well-established principles of statutory construction counsel otherwise; if we were to adopt Alexander's reading of section 924(e)(2)(A)(ii), the term "involving" would be rendered meaningless— "distribution alone would qualify as a crime 'involving' distribution" and possession with intent to distribute alone would qualify as a crime "involving" possession with intent to distribute. United States v. Contreras, 895 F.2d 1241, 1244 (9th Cir. 1990) (rejecting argument that possession with intent to distribute is not crime "involving" distribution). . . . .

Alexander, 331 F.3d at 131.

Daniels challenges this line of reasoning, claiming that the "term 'involving' is necessary to avoid the problem of nomenclature that necessarily arises when a federal statute incorporates fifty state statutes." (Appellant's Reply Brief at 13.) Section 780-113(a)(3) of the Pennsylvania drug statute prohibits the unauthorized "delivery" of a controlled substance, but, unlike § 924(e)(2)(A)(ii), it does not use the term "distributing." Daniels appears to suggest that, if the ACCA provision were to include only crimes that "prohibit" (as opposed to "involve") distribution, a violation of the Pennsylvania drug statute would not constitute a "serious drug offense." (See id. ("In fact, a person can commit drug offenses in Pennsylvania through 'distribution' just not under 35 Pa. Stat. § 780-113(a)(30). The terms have different definitions (see § 780-102(b)), notwithstanding that 'delivery' is the equivalent of the generic "distribution" in Section 924(e)(2)(A)(ii).").)

Daniels offers no case law or any other support for his rather complicated reading. Both Pennsylvania and federal drug laws provide essentially identical definitions of distribution and delivery, defining "delivery" or "deliver" as the actual, constructive, or attempted transfer of a controlled substance and "distribute" as "to deliver" (other than by administering or dispensing the substance). Compare 21 U.S.C. § 802(8), (11) with 35 Pa. Stat. Ann. § 780-102(b). Although this issue was not specifically addressed in our opinion, we still concluded in Glass that Section 780-113(a)(30) constitutes a "controlled substance offense" under the career offender Guidelines. The Guidelines nevertheless define a "controlled substance offense" as an offense that, inter alia, "prohibits" the distribution of a controlled substance or the possession of controlled substance with intent to distribute (thereby omitting any "involving"

22

language).  Glass, 904 F.3d at 321-24.

Given our precedential opinion in Gibbs, it is not too surprising that Daniels asks us to reconsider this ruling in light of subsequent Supreme Court case law.  See, e.g., 3d Cir. I.O.P. 9.1 ("it is the tradition of this court that the holding of a panel in a precedential opinion is binding on subsequent panels.  Thus, no subsequent panel overrules the holding in a precedential opinion of a previous panel.  Court en banc consideration is required to do so.").  It is also not unexpected that he challenges the various rulings from other circuits adopting an expansive interpretation of § 924(e)(2)(A)(ii) and holding that this ACCA provision encompasses attempts.  Daniels contends that the Supreme Court's reasoning in Mathis v. United States, 136 S. Ct. 2243 (2016), calls into question our interpretation of the imprecise term "involving" as well as our application of the modified categorical approach.  According to Daniels, the focus upon state statutory elements under the categorical approach "cuts against the argument that the presence of the term 'involving' in Section 924(e)(2)(A)(ii) should encourage a more elastic approach to inclusion of drug offenses that do not approximate those listed in Section 924(e)(2)(A)(ii)." (Appellant's Reply Brief at 8.)  Additionally, Daniels argues "[i]t would violate due process to impose such liability in the absence of any such reference [to attempts].  See United States v. Lanier, 520 U.S. 259, 266 (1977) ('[T]he canon of strict construction of criminal statutes, or rule of lenity, ensures fair warning by resolving ambiguity in a criminal statute as to apply it only to conduct clearly covered') (citations omitted)." (Appellant's October 1, 2018 Letter at 2.)  Daniels finally attempts to compare § 924(e)(2)(A)(ii) with the ACCA's "residual" clause (i.e., "violent felony" means any crime that, inter alia, "otherwise involves conduct that presents a serious

potential risk of physical injury to another," 18 U.S.C. § 924(e)(2)(B)(ii)). This clause was invalidated as unconstitutionally vague by the Supreme Court in Johnson v. United States, 135 S. Ct. 2551 (2015).

Given the narrow scope of our holding in this case, we reject Daniels's assertion that Gibbs and the existing case law interpreting § 924(e)(2)(A)(ii) undermine the categorical approach. We hold that the definition of a "serious drug offense" under § 924(e)(2)(A)(ii) encompasses attempts, as defined by federal law, to manufacture, distribute, or possess with intent to manufacture or distribute a controlled substance. Our holding thereby implicates a categorical comparison between the elements of an inchoate drug crime under the applicable state law with the elements of such an inchoate offense under federal drug law (an analysis we conduct in the next section of this opinion). We accordingly need not—and do not—decide if "Section 924(e) does not require the state statute under which a defendant was convicted to be co-extensive with a federal drug statute." (Appellee's Brief at 8.) Given our analysis of Pennsylvania and federal law governing attempts and accomplice liability, we leave for another day the government's alternative arguments that, "even if the Pennsylvania statute extended to offers to sell: any statute that bars an 'offer to sell drugs' is one 'involving' the distribution of drugs under ACCA, as many courts have held" (id. at 26 (citations omitted)), and that, even if Pennsylvania's solicitation law sweeps more broadly than its federal counterpart, "[s]uch criminal conduct is not so remote or tangential to its aim, that is, the actual or constructive transfer of a controlled substance, to justify disqualification as a 'serious drug offense' under ACCA" (id. at 29). See Glass, 904 F.3d at 322 (observing that we have yet to determine whether or in what circumstances state statutes

24

criminalizing offers to sell constitute "controlled substance offenses," noting that other circuits have held state statutes expressly criminalizing mere offers do not qualify, and, assuming that such statute sweeps beyond career offender Guideline, concluding that Section 780-113(a)(30) does not do so).

We also do not agree with the other assertions raised by Daniels. Daniels (yet again) cites to no case law rejecting Gibbs or the numerous "serious drug offense" rulings from other circuits based on Mathis, the rule of lenity, or vagueness concerns. On the contrary, he draws more attention to this lack of case law by observing that the Supreme Court in James (which was overruled by Johnson) "pointed out, as the Government has here, that 'every Court of Appeals that ha[d] construed the' [attempted burglary] issue in James, 'ha[d] held the offense qualifies as [an ACCA predicate.]'" (Appellant's Reply Brief at 14 (quoting James v. United States, 550 U.S. 192, 204 (2007)).) Furthermore, the limits of the modified categorical approach recently addressed by the Supreme Court in Mathis have no bearing on the current appeal. Daniels was not convicted under a statute criminalizing "wear[ing] body armor during the commission of a felony,'" Gibbs, 656 F.3d at 184 (quoting 11 Del. C. § 1449), or stating that if two or more persons conspire "'[t]o commit any crime[,] . . . they are guilty of a conspiracy,'" United States v. Trent, 767 F.3d 1046, 1052 (10th Cir. 2014) (quoting Okla. Stat. Ann. tit. 21, § 421(A)), abrogated by Mathis, 136 S. Ct. at 2251 & n.1. Instead, he was convicted of "violations of the Pennsylvania drug act, which prohibits 'the manufacture, delivery, or possession with intent to manufacture or deliver, a controlled substance.'" (Appellant's Brief at 10 (quoting § 780-113(a)(30)).) It is Daniels who then goes beyond the bare terms of Section 780-113(a)(30) to point

out that this specific provision includes attempts as well as completed drug crimes. The <u>Johnson</u> Court also focused on the "grave uncertainty about how to estimate the risk posed by a crime," <u>Johnson</u>, 135 S. Ct. at 2557, as well as "how much risk it takes for a crime to qualify as a violent felony," <u>id.</u> at at 2558. Unlike the residual clause, § 924(e)(2)(A)(ii) does not include any reference to a potential risk of injury.[6]

### B. Attempts and Accomplice Liability under Federal and Pennsylvania Law

Because § 924(e)(2)(A)(ii)'s definition of "a serious drug offense" encompasses attempts (as defined under federal law) to manufacture, distribute, or possess with intent to manufacture or distribute a controlled substance, we must decide whether Pennsylvania criminalizes conduct under the attempt or accomplice framework that are not crimes under federal law. According to Daniels, Pennsylvania law sweeps more broadly than federal law because it criminalizes offers to sell, mere preparation, and solicitation by the buyer. We do not agree. Given our recent precedential opinions in <u>Glass</u> and <u>Martinez</u>, we conclude that Pennsylvania's approach to attempts as well as the state's doctrine of accomplice liability are coextensive with its federal counterparts.

The federal and Pennsylvania approaches to attempt liability in the drug offense context are essentially identical. As we have already explained, Pennsylvania law defines "deliver" or "delivery" as "the actual, constructive, or attempted transfer

---

[6] We also note that <u>Gibbs</u> expressly considered and rejected a vagueness challenge to our interpretation of a "serious drug offense." <u>Gibbs</u>, 656 F.3d at 188-89.

from one person to another of a controlled substance." 35 Pa. Stat. Ann. § 780-102(b). The federal CSA "also defines the 'delivery' of a controlled substance to mean 'the actual, constructive, or attempted transfer of a controlled substance.'" Glass, 904 F.3d at 322 (quoting 21 U.S.C. § 802(8)). Section 846 of the CSA provides that "[a]ny person who attempts . . . to commit any offense defined in this subchapter shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt." Most federal courts (including this Circuit) have followed the Model Penal Code's framework for attempt liability. See, e.g., Martinez, 906 F.3d at 284. "Consistent with the Model Penal Code, federal 'attempt' requires intent and a substantial step towards to the commission of the crime. See United States v. Cruz-Jiminez, 977 F.2d 95, 101-03 (3d Cir. 1992); Model Penal Code § 5.01." Glass, 904 F.3d at 323 n.3; see also, e.g., Martinez, 906 F.3d at 284 ("So we too require a 'substantial step toward commission of the crime' that 'strongly corroborat[es] the firmness of a defendant's criminal purpose.' United States v. Cicco, 10 F.3d 980, 985 (3d Cir. 1993)."). 18 Pa. Cons. Stat. Ann. § 901(a) states that "[a] person commits an attempt when, with intent to commit a specific crime, he does any act which constitutes a substantial step toward the commission of that crime." While it was undisputed in Glass that "'attempt' under Pennsylvania law has the same meaning as 'attempt' in the CSA and the Guidelines," Glass, 904 F.3d at 322, Martinez concluded that both New Jersey and federal attempt law follow the same Model Penal Code approach, Martinez, 906 F.3d at 284-85 ("It defines attempt as a purposeful 'act or omission constituting substantial step in a course of conduct planned to culminate in [the] commission of the crime." N.J. Stat. Ann. § 2C:5-1(a)(3). And a 'substantial step' must be 'strongly corroborative' of the actor's criminal purpose.' Id. § 2C:5-1(b)."). The Pennsylvania

27

attempt provision is also based on the Model Penal Code.  See, e.g., 18 Pa. Cons. Stat. Ann. § 901 Jt. State Gov't Comm'n cmt. ("This section is derived from Section 5.01 of the Model Penal Code."); Commonwealth v. Wojdak, 466 A.2d 991, 1008 n.3 (Pa. 1983) (Hutchinson, J., concurring and dissenting) (stating that Pennsylvania attempt statute and Model Penal Code "similarly define" criminal attempt).  Accordingly, "[t]here is no daylight between the federal and [Pennsylvania] formulations [of attempt]."  Martinez, 906 F.3d at 285.

Similarly, both states, as well as the federal government and the Model Penal Code, treat some solicitations as attempts. Under New Jersey law, solicitation constitutes an attempt only if it is strongly corroborative of the actor's criminal purpose.  Id. As we explained in Martinez:

> New Jersey's approach, like that of federal law, follows the Model Penal Code.  Both federal law and the Model Penal Code recognize that "solicitation accompanied by the requisite intent may constitute an attempt."  United States v. Am. Airlines, Inc., 743 F.2d 1114, 1121 (5th Cir. 1984); see, e.g., United States v. Cornelio-Pena, 435 F.3d 1279, 1286-87 (10th Cir. 2006); Model Penal Code § 5.01(2)(g).  Our Court agrees. Glass, [904 F.3d at 323 n.3].  So New Jersey law tracks federal law:  Solicitation may amount to an attempt when it strongly corroborates the actor's criminal purpose.  Not all solicitations make the cut, but some do.

Id. at 285-86; see also Glass, 904 F.3d at 323 n.3 ("In pointing out this flaw in the logic of Glass's argument, we are not

28

suggesting that 'attempted transfer' in 21 U.S.C. § 802(8) includes offers or solicitations other than those that meet the requirements for 'attempt' under the CSA. Consistent with the Model Penal Code, federal 'attempt' requires intent and a substantial step towards the commission of the crime." (citing Cruz-Jimenez, 977 F.2d at 101-03; Model Penal Code § 501)). In reaching this conclusion, we expressly disagreed with a Ninth Circuit solicitation case cited by Daniels. In Sandoval v. Sessions, 866 F.3d 986 (9th Cir. 2017), the Ninth Circuit addressed an Oregon delivery statute that resembles New Jersey's trafficking law (i.e., they both require a substantial step that is strongly corroborative of the actor's criminal purpose and allow solicitation to amount to attempt). Martinez, 906 F.3d at 286 (citing Sandoval, 866 F.3d at 991). "Yet the Ninth Circuit held that the Oregon law was broader than federal law. 'Although [it may be] strongly corroborative of intent to commit a crime,' the court reasoned, 'offering to deliver a controlled substance does not cross the line between preparation and attempt for the purposes of the [federal] Controlled Substances Act.'" Id. (quoting Sandoval, 866 F.3d at 990). However, we emphasized the shared origins of federal and state attempt law:

> As explained above, federal attempt law is explicitly based on the Model Penal Code. Both provide that *any* substantial step that strongly corroborates the actor's criminal purpose amounts to an attempt. Model Penal Code § 5.01(2). The Model Penal Code specifies that solicitation "shall not be held insufficient as a matter of law" if it is strongly corroborative, as we and other circuits recognize. Id. § 5.01(2)(g); see, e.g., Glass, [904 F.3d at 323 n.3]; Am. Airlines, 743 F.2d at 1121.

29

We see no reason to reject the Model Penal Code. Our precedent embraces it. Solicitation, like any number of other acts, can amount to a federal attempt. So New Jersey attempt law is no broader than federal law. Martinez's conviction is thus an aggravated felony, making him removable.

Id. at 286-87.

Likewise, Pennsylvania and federal law base their respective approaches to accomplice liability on the Model Penal Code. 18 Pa. Cons. Stat. Ann. § 306(c)(1) states that a person is an accomplice of another person in the commission of the offense "if (1) with the intent of promoting or facilitating the commission of the offense, he: (i) solicits such other person to commit it or (ii) aids or agrees or attempts to aid such other person in planning or committing it." This definition is almost identical to the Model Penal Code's definition of accomplice liability, e.g. "a person is an accomplice if: (a) with the purpose of promoting or facilitating the commission of an offense, he (i) solicits such other person to commit it, or (ii) aids or agrees or attempts to aid such person in planning or committing it." Model Penal Code § 2.06(3). In turn, "[w]hoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal." Id. at § 2(a). Both Pennsylvania law and the Model Penal Code essentially require what we have stated is required to prove aiding and abetting under federal law, i.e., proof that the defendant had the specific intent to facilitate the crime and acted to facilitate it. See, e.g., United States v. Mercado, 610 F.3d 841, 846 (3d Cir. 2010).

"We have yet to determine whether or in what circumstances state statutes that criminalize offers to sell constitute 'controlled substance offenses' under the Guidelines. Increasingly, however, our sister Circuits have held state statutes expressly criminalizing a mere 'offer' do not." Glass, 904 F.3d at 322 (citing United States v, Madkins, 866 F.3d 1136, 1147 (10th Cir. 2017); United States v. Hinkle, 832 F.3d 569, 572 (5th Cir. 2016); United States v. Savage, 542 F.3d 959, 965-66 (2d Cir. 2008); United States v. Redden, 875 F.3d 374, 375 (7th Cir. 2017), cert. denied, 138 S. Ct. 1343 (2018); United States v. Bryant, 571 F.3d 147, 158 (1st Cir. 2009)). Glass refrained from answering this question because Section 780-113(a)(30) does not criminalize mere offers to sell. Id. As we have already observed in our discussion of § 924(e)(2)(A)(ii) and attempts, we likewise need not—and do not—decide at this time whether the government is correct that "any statute that bars an 'offer to sell drugs is one 'involving' the distribution under ACCA" (Appellee's Brief at 26 (citations omitted)) because the Pennsylvania drug statute does not "cross[] that line," id.

In his supplemental submission addressing Glass, Daniels "recognizes that Circuit precedent now holds that Pennsylvania does not impose liability for an offer to sell." (Appellant's October 1, 2018 Letter at 3.) We reasoned that Section 780-113(a)(10) does not mention offers to sell (even though at least one other provision contained in Section 780-113 does expressly prohibit offers, see 35 Pa. Stat. Ann. § 780-113(a)(1)). Glass, 904 F.3d at 322-23. Glass argued that a mere offer to sell drugs is implied by Pennsylvania's definition of "deliver," which, like both the CSA and the Guidelines, includes attempted transfers. Id. at 322. We rejected that argument, stating that, "[a]s Glass does not dispute that 'attempt' under Pennsylvania has the same

31

meaning as 'attempt' in the CSA and the Guidelines, his argument, if accepted, would prove self-defeating, for if § 780-102(b) sweeps in mere offers to sell, then by his logic, so does 21 U.S.C. § 802(8) and U.S.S.G. § 4B1.2, making the state offense broad, but no broader than the federal one." Id. at 322-23 (footnote omitted). Furthermore, "the parties have failed to uncover any authority, such as state judicial decisions or pattern jury instructions, suggesting that Pennsylvania would prosecute a mere offer to sell under § 780-113(a)(30)." Id. at 323 (citing Duenas-Alvarez, 549 U.S. at 193). The Glass Court then distinguished Pennsylvania's statutory definition of "deliver" from the more expansive Texas definition at issue in Hinkle and Conley (which expressly states that "deliver" includes offering to sell) and compared it with the narrower Illinois understanding of "deliver" addressed in Redden. Id. Finally, we noted that our conclusion "is consistent with our prior holdings regarding § 730-113(a)(30) outside of the U.S.S.G. § 4B1.1 context," including our holding in Abbott that a conviction for cocaine-based offenses "is not overbroad in the context of the ACCA's definition of 'serious drug offense.'" Id. (citing Abbott, 748 F.3d at 160); see also, e.g., Martinez, 906 F.3d at 286 (distinguishing Texas law encompassing mere offer to sell without evidence of possession or transfer as "far cry" from conviction under New Jersey possession with intent statute).

In addition to seeking to preserve the "offer to sell" issue for later review, Daniels purportedly cites to an authority suggesting that Pennsylvania does in fact prosecute offers to sell. See, e.g., Duenas-Alvarez, 549 U.S. at 193 ("[T]o find that a state statute creates a crime outside the generic definition . . . requires a realistic probability, not a theoretical possibility, that the State would apply its statute to conduct that falls outside the generic definition of a crime."). We do not agree.

In Commonwealth v. Donahue, 630 A.2d 1238 (Pa. Super. Ct. 1993), the defendant argued that the Berks County trial court lacked jurisdiction over the drug possession crimes because the prosecution failed to adduce evidence that he actually or constructively possessed marijuana in Berks County (where his supplier, Bieber, lived) as opposed to Bucks County (where the defendant resided and received the shipment of marijuana), id. at 1242-43. The Pennsylvania Superior Court, however, determined that Donahue was properly convicted as an accessory to Bieber's possession in Berks County. Id. at 1244. In the process, it looked to Pennsylvania's crime of solicitation, 18 Pa. Cons. Stat. Ann. § 902, as well as the state statutory provision governing accomplice liability, see § 306. Donahue, 630 A.2d at 1243-44.

The Donahue court accordingly applied Pennsylvania's law of accomplice liability—which is essentially identical to the federal approach to liability for aiding and abetting. The facts indicated that Bieber and Donahue were business associates involved in the distribution of marijuana. Id. at 1244. Donahue told Bieber by telephone that, if Bieber received a shipment, he would be interested in acquiring it. Id. The supplier then received a shipment at his home in Berks County and transported it to the defendant's home in Bucks County. Id. "Bieber also testified that he had conducted business with appellant five to ten times in the past." Id. Based on their prior relationship, the Pennsylvania Superior Court believed it could be reasonably inferred that the statement to Bieber implied that Donahue "both encouraged and requested Bieber to obtain marijuana to sell to him." Id. Accordingly, the evidence established that he solicited Bieber to purchase and possess the marijuana with the intent to deliver. Id. The evidence also

33

established that he intended to promote or facilitate the commission of the offense under the accomplice liability provision: "Taken one step further, it is also reasonably clear that appellant intended to promote Bieber to commit the offense so that he, in turn could obtain marijuana to sell." Id. In fact, Donahue's conviction was vacated on other grounds, and the Pennsylvania Superior Court specifically directed the trial judge to "instruct the jury that appellant may only be found guilty for those actions which occurred in Berks County if it finds that he was an accomplice to Bieber." Id. at 1244 n.8.

We also reject Daniels's assertion that Commonwealth v. Parker, 957 A.2d 311 (Pa. Super. Ct. 2008), indicated that Pennsylvania effectively criminalizes mere preparation. In that case, a police officer conducting a traffic stop found that Parker had a substance that was made to look like cocaine but was actually candle wax. Id. at 317-18. The Pennsylvania Superior Court affirmed Parker's conviction for attempted delivery of a counterfeit controlled substance under 18 Pa. Cons. Stat. Ann. § 901(a) and 35 Pa. Stat. Ann. § 780-113(a)(35)(ii). Id. Daniels acknowledges that the Pennsylvania Superior Court employed the substantial step standard (the well-established standard applicable under the Model Penal Code as well as both New Jersey and federal law) and found that the defendant had taken such a step. He argues that, even under the interpretation most favorable to the government, Parker did nothing more than prepare the items for a later sale. But the Parker court never suggested that it was applying some unique approach to the well-established "substantial step" requirement. On the contrary, it explained that the actions that Parker undertook constituted a substantial step:

He was carrying the cocaine-like substance

34

with him, packaged in plastic baggies "consistent with the way drug dealers handle or package crack cocaine," and he admitted that he would sell it "if the opportunity presented itself." In Commonwealth v. Irby, 700 A.2d 463 (Pa. Super. 1997), we found that a defendant who packaged candle wax in plastic baggies as cocaine and tried to sell it to an undercover officer, even though the sale never actually occurred, was sufficient to constitute delivery of a noncontrolled substance. Here, Parker took similar substantial steps toward the commission of the same crime, except that he was waiting for the opportunity of a possible buyer to present itself. Therefore, the evidence was sufficient to convict Parker of attempted delivery of a noncontrolled substance.

Id. at 318 (citation omitted). The state court thereby mirrors the Model Penal Code itself, which identifies both "possession of materials to be employed in the commission of the crime, that are specially designed for such unlawful use or that can serve no lawful purpose of the actor under the circumstances" and "possession, collection or fabrication of materials to be employed in the commission of the crime, at or near the place contemplated for its commission, if such possession, collection or fabrication serves no lawful purpose of the actor under the circumstances" as conduct that could be held to be a substantial step. Model Penal Code § 501(2)(e), (f).

Like Daniels, Martinez argued that "New Jersey law treats more forms of inchoate preparation for a crime as attempt than federal law does." Martinez, 906 F.3d at 281. We rejected his argument, pointing out that the most recent explanation of

35

attempt by the New Jersey Supreme Court distinguishes between mere preparation and a substantial step and thereby tracks both the Model Penal Code and federal law.  Id. at 285 (quoting State v. Farrad, 753 A.2d 648, 653 (N.J. 2000)).  "In dicta, Fornino stated:  'It is only 'very remote preparatory acts' which are excluded from the ambit of attempt liability.'"  Id. (quoting State v. Fornino, 539 A.2d 301, 306 (N.J. App. Div. 1988)).  Despite this statement (which goes farther than the language in Parker), we explained that Fornino was a plain error case and the state court thereby did not have an occasion to define attempt liability.  Id.  The New Jersey Appellate Division "simply noted that 'some preparation may amount to an attempt.  It is a question of degree.'"  Id. (quoting Fornino, 539 A.2d at 306).  "So New Jersey courts wrestle with drawing that line, just as federal courts and the Model Penal Code do."  Id.  The same is true with respect to the Pennsylvania courts.

Finally, Daniels insists that Pennsylvania criminalizes a buyer's solicitation.  In other words, he argues that, while a drug purchaser cannot be held liable as an accomplice of the seller under federal law, he or she could be held liable under Pennsylvania law.   In support, Daniels relies on the Pennsylvania Superior Court's ruling in Commonwealth v. Moss, 852 A.2d 374 (Pa. Super. Ct. 2004), "which conferred liability under Section 7512 for a delivery, upon a buyer who had, only by virtue of being a buyer, facilitated the delivery." (Appellant's Reply Brief at 20.)  18 Pa. Cons. Stat. Ann. § 7512(a) provides that a person commits a felony of the third degree if that person "uses a communication facility to commit, cause or facilitate the commission or the attempt thereof of any crime which constitutes a felony under this title or under the act of April 14, 1972 (P.L. 233, No. 64), known as the Controlled Substance, Drug, Device and Cosmetic Act."  In contrast, the

36

United States Supreme Court rejected the theory that an analogous federal provision (prohibiting the use of a communication facility in committing, causing, or facilitating the commission of any act or acts constituting a felony under the CSA) applies to someone "making a misdemeanor drug purchase because his phone call to the dealer can be said to facilitate the felony of drug distribution." Abuelhawa v. United States, 556 U.S. 816, 818 (2009) (addressing 21 U.S.C. § 843(b)). "To the contrary, Congress used no language spelling out a purpose so improbable, but legislated against a background usage of terms such as 'aid,' 'abet,' and 'assist' that points in the opposite direction and accords with the CSA's choice to classify small purchases as misdemeanors." Id. at 824 (footnote omitted); see also, e.g., id. at 820 ("To begin with, the Government's literal sweep of 'facilitate' sits uncomfortably with common usage. Where a transaction like a sale necessarily presupposes two parties with specific roles, it would be odd to speak of one party as facilitating the conduct of the other.").

We nevertheless believe that Daniels takes both Moss and Abuelhawa too far. Daniels was not convicted under Section 7512. As we have already explained in some detail, the federal and Pennsylvania principles governing accomplice as well as attempt liability are essentially identical (after all, they are both based on the Model Penal Code). In turn, neither the Pennsylvania Superior Court nor the United States Supreme Court was making broad pronouncements about the scope of accomplice liability (or liability for attempt offenses). Although it stated that the focus of its inquiry would be whether there was sufficient evidence that the defendants' telephone calls facilitated the actual commission of an underlying felony, the Moss court addressed at some length whether the defendants took a substantial step toward delivery of a controlled substance

37

under the law of attempt. Moss, 852 A.2d at 382-84. It even determined that there was insufficient evidence to support some of the convictions.[7] Id. at 383-84. Rejecting the district court's

---

[7] According to the Pennsylvania Superior Court, the evidence was sufficient to sustain Sullivan's conviction because he placed a telephone call to Johnson inquiring about purchasing drugs, Johnson agreed to make the sale, and Johnson was seen briefly entering Sullivan's home. Moss, 852 A.2d at 383. "Appellant [Sullivan] made the necessary preparations and arranged a meeting point at which he and Johnson would complete the illicit transaction." Id. "The record against Moss establishes, as to Counts 1, 2, 6, 7, and 8, Moss engaged in telephone conversations with a confidential informant and these telephone conversations facilitated controlled buy transactions between Moss and the informant." Id. at 384; see also, e.g., id. at 378 ("The only conclusion that can be reached from the stipulation is that the telephone was used to make the arrangements for the controlled buys that subsequently did occur between the confidential informant and the Defendant."). However, the court found that Moss's convictions on Counts 12 and 13 cannot stand because of the absence of any evidence that Johnson actually attempted to make the delivery he discussed with Moss. Id. at 384. "The Commonwealth may not obtain a conviction under § 7512 based solely on evidence that the Appellant engaged in drug-related telephone conversations with a known drug trafficker." Id. Likewise, "the record is devoid of any evidence that the contemplated transaction between Austin and Johnson actually occurred or that either Austin or Johnson took a substantial step toward completion of the transaction they discussed." Id. at 383-84. "Viewed in the light most favorable to the Commonwealth, the evidence establishes merely that Austin engaged in drug-related telephone conversations with a

---

38

known drug trafficker." Id. at 384.

According to Daniels, the Pennsylvania Superior Court cites Moss as an example of the breadth of what constitutes a substantial step for attempted delivery in Pennsylvania. See Commonwealth v. Rivers, No. 1004 EDA 2013, 2014 WL 10936727, at *2-*5, *16-*17 (Pa. Super. Ct. May 30, 2014) (non-precedential decision). In Rivers, the evidence clearly established that the defendant went beyond mere preparation (e.g., the defendant on his own initiative gave his telephone number to the undercover officer so that she could contact him to purchase illicit substances, they engaged in a telephone discussion to arrange a transaction, setting the price as well as the time and location, the defendant was proceeding toward and was near the site for the transaction when he was arrested, and he had a bag containing counterfeit cocaine). See, e.g., id. at *17. Daniels also claims that "it now appears that a person who solicits another to provide drugs – as by offering to pay a dealer – may be subject to conviction of delivery in violation of subsection (a)(30) as an accomplice." (Daniels's October 1, 2018 Letter at 3 (citing Commonwealth v. Murphy, 844 A.2d 1228, 1234 (Pa. 2004)).) "In federal law, by contrast, solicitation will not support a drug trafficking conviction under 21 U.S.C. §§ 841(a) and 846. See United States v. Rivera-Sanchez, 247 F.3d 905, 908-09 (9th Cir. 2001)." (Id.) The Murphy court determined that the jury could have found that the defendant intended to aid in the transfer of drugs by the seller to the undercover officer "based on the evidence that Murphy called out to Rivas after the trooper approached him, confirmed to Rivas that the trooper was not a police officer, stayed with the trooper while Rivas got drugs, and requested compensation from the trooper for his efforts." Murphy, 844 A.2d at 1237. The

39

suggestion that <u>Abuelhawa</u> altered the pleading requirements for offenses invoking accomplice liability, we have explained that "[t]he <u>Abuelhawa</u> Court simply addressed a narrow question regarding the scope of the term 'facilitate' under § 843(b)." <u>United States v. Huet</u>, 665 F.3d 588, 599 (3d Cir. 2012) (citing <u>Abuelhawa</u>, 556 U.S. at 818); <u>see also, e.g.</u>, <u>id.</u> ("Nor did the decision modify the law of accomplice liability under 18 U.S.C. § 2. The elements of aiding and abetting under § 2 remain the same."). Like <u>Huet</u>, "[w]e decline to extend its holding any further."[8] <u>Id.</u>

IV.

For the foregoing reasons, we will affirm the mandatory minimum sentence of fifteen years' imprisonment entered by the District Court.

---

state supreme court further found that the evidence showed that Murphy actually aided Rivas in transferring the drugs to the trooper by screening the trooper for the seller. <u>Id.</u> Finally, we expressly rejected the Ninth Circuit's understanding of federal attempt law in <u>Martinez</u>. 906 F.3d at 286-87.

[8] Accordingly, we need not (and do not) consider whether, even if Pennsylvania's solicitation law sweeps more broadly than its federal counterpart, "[s]uch criminal conduct is not so remote or tangential to its aim, that is, the actual or constructive transfer of a controlled substance, to justify disqualification as a 'serious drug offense' under ACCA" (Appellee's Brief at 29).